1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

20-20009-CR-BLOOM/LOUIS

UNITED STATES OF AMERICA,          )
                                   )
                PLAINTIFF,         )
                                   )
        VS.                        )
                                   )
LEMON CLARENCE BENTON,             )
                                   )
                DEFENDANT.         )
_____)

(TRANSCRIPT BY DIGITAL RECORDING)

TRANSCRIPT OF PRETRIAL DETENTION HEARING HAD BEFORE
THE HONORABLE LISETTE MARIE REID, IN MIAMI, MIAMI-DADE COUNTY,
FLORIDA, ON JANUARY 29, 2020, IN THE ABOVE-STYLED MATTER.

APPEARANCES:

FOR THE GOVERNMENT:  KEVIN GERARD, A.U.S.A.
                     99 NE 4TH STREET
                     MIAMI, FL 33132 - 305 961-9000

FOR THE DEFENDANT:   LAUREN KRASNOFF, A.F.P.D.
                     150 WEST FLAGLER STREET, SUITE 1500
                     MIAMI, FL 33130 - 305 536-6900

                CARL SCHANZLEH, RPR - CM
                CERTIFIED COURT REPORTER
                   9960 SW 4TH STREET
                PLANTATION, FLORIDA 33324
                     954 424-6723

1

2                         TABLE OF CONTENTS

3     WITNESSES:                    DIRECT  CROSS REDIRECT RECROSS

4     UNISKY ARRNORA ............................. 6

5                         INDEX TO EXHIBITS

6     EXHIBITS                    MARKED FOR      RECEIVED
                                  IDENTIFICATION  IN EVIDENCE
7
      DESCRIPTION                 PAGE    LINE    PAGE    LINE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  THE NEXT CASE IS LEMON CLARENCE BENTON,
 2   CASE NUMBER 20-20009.
 3              MR. GERARD:  GOOD MORNING, YOUR HONOR.  KEVIN GERARD
 4   FOR THE GOVERNMENT.
 5              THE COURT:  GOOD MORNING.
 6              MS. KRASNOFF:  GOOD MORNING, YOUR HONOR.  LAUREN
 7   KRASNOFF, ASSISTANT FEDERAL DEFENDER ON BEHALF OF MR. BENTON
 8   WHO IS PRESENT BEFORE THE COURT.
 9              THE COURT:  GOOD MORNING.
10              SO IS THIS SIMPLY -- SOLELY A DETENTION HEARING TODAY,
11   CORRECT?
12              MS. KRASNOFF:  I BELIEVE SO.  YES, YOUR HONOR.
13              THE COURT:  I SEE A DATE FOR ARRAIGNMENT.  HE WAS
14   ALREADY ARRAIGNED.
15              MS. KRASNOFF:  YES.  I BELIEVE MR. ABRAMS ARRAIGNED
16   HIM WHEN HE WAS TAKEN -- WHEN HE WAS BROUGHT IN ON HIS FIRST
17   APPEARANCE.
18              THE COURT:  ALL RIGHT.
19              GOVERNMENT, YOU HAVE THE BURDEN OF PROOF.
20              MR. GERARD:  THANK YOU, JUDGE.
21              SO THE DEFENDANT HAS BEEN CHARGED BY INDICTMENT IN --
22   WITH ONE COUNT OF VIOLATION OF 18(USC)922(G)(1).  THE DEFENDANT
23   ALSO IN THAT CASE HE QUALIFIES AS AN ARMED CAREER CRIMINAL.
24              THE GOVERNMENT IS -- THERE ARE NO REBUTTABLE
25   PRESUMPTIONS THAT APPLY PURSUANT TO 3142(E).  SO THE GOVERNMENT
```

1  WOULD LIKE TO PROCEED ON PROFFER AND THE GOVERNMENT WILL ALSO

2  BE RELYING ON THE INFORMATION CONTAINED IN THE PRETRIAL

3  SERVICES REPORT.

4              THE COURT:  OKAY.  PROCEED.

5              MR. GERARD:  GOOD.

6              ON NOVEMBER 14, 2019, THE DEFENDANT WAS OBSERVED BY

7  MIAMI-DADE COUNTY LAW ENFORCEMENT RIDING A BIKE IN BROADWAY

8  PARK.  THIS WAS AT APPROXIMATELY SIX P.M. OR SHORTLY

9  THEREAFTER.  IT WAS DARK OUT AND THE DEFENDANT WAS ALSO SEEN ON

10  HOLDING A BUD LIGHT BEER BOTTLE IN HIS -- IN HIS LEFT HAND.

11              SO BEING IN A PARK AFTER HOURS AND HOLDING AN OPEN

12  CONTAINER OF ALCOHOL ARE LOCAL ORDINANCE VIOLATIONS.  SO THE

13  MIAMI-DADE DETECTIVES YELLED OUT TO THE DEFENDANT TO STOP.

14              AT THE TIME THEY DID THIS THE DETECTIVES WERE WEARING

15  TACTICAL VESTS WITH THE WORD "POLICE" WRITTEN IN LARGE LETTERS

16  ON THE FRONT.  THE DEFENDANT DID NOT STOP AND COMPLY WITH THE

17  ORDER TO STOP.  INSTEAD HE CONTINUED RIDING HIS BIKE SOUTHBOUND

18  AND THEN TURNED WESTBOUND THROUGH THE PARK IN AN ATTEMPT TO

19  EVADE THE OFFICERS.

20              THE OFFICERS WERE ABLE TO APPREHEND THE DEFENDANT

21  INSIDE THE PARK.  HE WAS -- HE WAS PLACED IN HANDCUFFS AND

22  SEARCHED.  DURING THE COURSE OF THAT SEARCH THE OFFICERS

23  RECOVERED A RAVIN FIREARMS MODEL P25, 25 AUTO FIREARM, A

24  SEMIAUTOMATIC HANDGUN, INSIDE A BLACK SOCK THAT WAS INSIDE A

25  SWEATER THAT THE DEFENDANT WAS WEARING.

1           SO THE -- THE FIREARM WAS PHOTOGRAPHED ON THE SCENE,

2    THE BEER BOTTLE THAT THE DEFENDANT HAD BEEN HOLDING WAS

3    PHOTOGRAPHED ON SCENE.  THE SEARCH OF THE DEFENDANT ALSO

4    REVEALED A TWIST OFF CAP TO A BUD LIGHT BEER BOTTLE INSIDE HIS

5    SWEATER POCKET.

6           THE FIREARM AND AMMUNITION WERE SUBMITTED FOR ANALYSIS

7    AND ATF CONFIRMED THAT THE FIREARM AND AMMUNITION WERE

8    MANUFACTURED OUTSIDE THE STATE OF FLORIDA AND TRAVELED IN

9    INTERSTATE COMMERCE TO ARRIVE IN THE STATE OF FLORIDA.

10          BENTON DID NOT MAKE ANY STATEMENTS AFTER HE WAS

11   ARRESTED.  THE OFFICERS BELIEVED THAT HE WAS IMPAIRED TO A

12   DEGREE AND DID NOT DECIDE TO READ HIM MIRANDA.

13          THANK YOU.

14          THE COURT:  DEFENSE?

15          MS. KRASNOFF:  YOUR HONOR, IF THERE IS AN OFFICER OR

16   AGENT PRESENT I WOULD LIKE TO CROSS-EXAMINE THEM.

17          MR. GERARD:  DETECTIVE UNISKY ARRNORA --

18          THE COURT:  OKAY.

19          MR. GERARD:  -- MIAMI-DADE POLICE DEPARTMENT.

20          THE COURT:  SWEAR THE WITNESS.

21          THE CLERK:  (WITNESS SWORN)

22          THE WITNESS:  YES, I DO.

23          THE CLERK:  PLEASE TAKE A SEAT AND STATE AND SPELL

24   YOUR LAST NAME FOR THE RECORD.

25          THE WITNESS:  THANK YOU.  UNISKY ARRNORA.  MY LAST

```
 1   NAME IS A-R-R-N-O-R-A.

 2                      UNISKY ARRNORA,

 3   BEING DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:

 4                      CROSS EXAMINATION

 5   BY MS. KRASNOFF:

 6   Q.  GOOD MORNING, DETECTIVE ARRNORA.  HOW ARE YOU?

 7   A.  GOOD MORNING, MA'AM.

 8   Q.  SO TELL ME WHERE BROADWAY PARK IS.

 9   A.  BROADWAY PARK IS LOCATED WITHIN MIAMI-DADE COUNTY AND THE

10   NORTH SIDE DISTRICT.

11   Q.  18TH AVENUE, IS THAT RIGHT?

12   A.  YES.  18TH AVENUE.

13   Q.  AND ABOUT 16TH STREET?

14   A.  NO, 69TH STREET.

15   Q.  69TH STREET.  I APOLOGIZE.

16   A.  YES, MA'AM.

17   Q.  69TH STREET.  AND THIS PARK IS KIND OF ON THE CORNER,

18   RIGHT?  IT OCCUPIES ABOUT A BLOCK ON A CORNER?

19   A.  YES, IT DOES.

20   Q.  AND IT'S A PARK SORT OF KNOWN HOMELESS PEOPLE STAY THERE?

21   A.  SOME HOMELESS PEOPLE STAY THERE, YES.

22   Q.  THEY OFTEN STAY IN TENTS AT NIGHT?

23   A.  YES, THEY DO.

24   Q.  SO WE CAN AGREE THAT THERE WERE NUMEROUS PEOPLE IN THE PARK

25   THAT NIGHT VIOLATING THAT ORDINANCE?
```

 1  A.  THERE WAS A COUPLE, YES.

 2  Q.  DID YOU ARREST ALL OF THEM?

 3  A.  NO.

 4  Q.  DID YOU STOP AND SEARCH ALL OF THEM?

 5  A.  NO.

 6  Q.  YOU SAID THAT -- OR YOU DIDN'T SAY.  AND I SHOULD HAVE

 7  ASKED YOU WHEN I BEGAN.  DID YOU HEAR MR. GERARD'S PROFFER?

 8  A.  YES.

 9  Q.  AND WOULD YOU AGREE TO ALL OF THOSE FACTS?

10  A.  YES, I DO.

11  Q.  IS THERE ANYTHING YOU THINK WE NEED TO CHANGE OR TO

12  CORRECT?

13  A.  NO.

14  Q.  WOULD YOU ADOPT THAT PROFFER AS YOUR OWN STATEMENT?

15  A.  YES.

16  Q.  SO MY UNDERSTANDING IS MR. BENTON WAS RIDING A BICYCLE,

17  RIGHT?

18  A.  YES.

19  Q.  AND THE PARK IS GRASS?

20  A.  IT HAS GRASS AND ALSO CEMENT.

21  Q.  WAS HE RIDING ON THE CEMENT OR ON THE GRASS?

22  A.  ON THE CEMENT ORIGINALLY.

23  Q.  THROUGH THE ACTUAL PARK, NOT ON THE SIDEWALK?

24  A.  THROUGH THE ACTUAL PARK.

25  Q.  OKAY.  AND THERE IS NO LIGHTS IN THE PARK, RIGHT?

1  A.  NO.

2  Q.  YOU HEARD THAT IT WAS PRETTY DARK.

3  A.  IT WAS DARK, YES.

4  Q.  AND HE SAID HE WAS HOLDING A BEER BOTTLE.

5  A.  YES.

6  Q.  AND IS IT YOUR TESTIMONY -- ACTUALLY LET ME ASK YOU.  HOW

7  FAR AWAY WERE YOU?

8  A.  OH, A GOOD FEET.

9  Q.  SO YOU WERE INSIDE OF THE PARK?

10  A.  ON THE SIDEWALK.

11  Q.  ON THE SIDEWALK OF THE PARK.

12  A.  YES.

13  Q.  WITH NOT LIGHTS AROUND YOU.

14  A.  THERE WAS LIGHTS -- THERE'S POLE LIGHTS ON THE STREET.

15  Q.  ON THE STREET BUT NOT IN THE PARK WHERE MR. BENTON WAS.

16  A.  BUT IT LIGHTS UP THE PARK A LITTLE BIT, YES.

17  Q.  AND IT'S YOUR TESTIMONY THAT YOU WERE ABLE TO TELL THAT THE

18  CAP WAS REMOVED FROM THE BEER BOTTLE FROM WHERE YOU WERE?

19  A.  THE CAP WAS REMOVED?  NO.

20  Q.  THE TWIST CAP.

21  A.  IT WAS REMOVED (UNINTELLIGIBLE)

22  Q.  SO THE BOTTLE WAS NOT OPEN.

23  A.  THE BOTTLE WAS OPEN.  THE CAP WAS FOUND AFTER I SEARCHED

24  THE DEFENDANT.

25  Q.  SO I GUESS THAT'S WHAT I'M ASKING.  FROM WHERE YOU WERE

1    LOOKING INTO A DARK PARK YOU'RE SAYING YOU WERE ABLE TO TELL

2    THAT THERE WAS NO TWIST OFF CAP ON THE TOP OF THE BEER BOTTLE?

3    A.   YES.

4    Q.   OKAY.  AND SO YOU WERE STOPPING MR. BENTON FOR THE -- BEING

5    IN THE PARK AND FOR THE OPEN CONTAINER, RIGHT?

6    A.   CORRECT.

7    Q.   AND BOTH OF THOSE THINGS WOULD BE LIKE A TICKET OR A

8    PROMISE TO APPEAR KIND OF THING IN MIAMI?

9    A.   (UNINTELLIGIBLE)

10   Q.   SO WHAT WAS -- WHY WAS HE SEARCHED?

11   A.   I'M SORRY?

12   Q.   WHY WAS HE SEARCHED?

13   A.   HE WAS GOING TO GO TO JAIL.

14   Q.   SO HE WAS SEARCHED INCIDENT TO ARREST?

15   A.   YES, MA'AM.

16   Q.   NOBODY SUSPECT AT THE TIME HE HAD A FIREARM ON HIM.

17   A.   NO, I DID NOT.

18   Q.   OKAY.  DID YOU ADVISE HIM?

19   A.   NO.

20   Q.   WAS ANYBODY ELSE PRESENT WHEN YOU MADE THE ARREST?

21   A.   YES.

22   Q.   WHO ELSE?

23   A.   DETECTIVE LOTEZ.

24   Q.   OKAY.  JUST THE TWO OF YOU?

25   A.   YES.

1    Q.   WERE YOU RIDING TOGETHER THAT DAY?

2    A.   YES.

3    Q.   HE'S YOUR REGULAR PARTNER.

4    A.   YES, HE'S MY PARTNER.

5    Q.   AND THERE WERE -- NO BODY CAMS YOU SAID?

6    A.   NO, MA'AM.

7    Q.   AND SO THERE IS NO DOCUMENTATION UNTIL AFTER THE ARREST IS

8    EFFECTUATED?

9    A.   I'M SORRY?

10   Q.   THERE IS NO DOCUMENTATION OF MR. BENTON, OR WHAT HE LOOKS

11   LIKE, OR WHERE ANYTHING WAS UNTIL AFTER THE FIREARM IS LOCATED?

12   A.   CORRECT.

13   Q.   WAS THE FIREARM SUBMITTED TO A LAB FOR FINGERPRINTS OR DNA

14   ADVERTISING?

15   A.   YES, MA'AM.

16   Q.   DO YOU KNOW THE RESULTS OF THOSE?

17   A.   NOT YET.

18   Q.   THEY'RE STILL -- THEY'RE PENDING?

19   A.   YES, MA'AM.

20   Q.   AND YOU SAID THAT MR. BENTON DID NOT MAKE ANY STATEMENTS?

21   A.   CORRECT.

22   Q.   AND THAT YOU BELIEVED HE WAS IMPAIRED?

23   A.   YES.

24   Q.   WAS HIS -- WAS HE BREATHALYZED?

25   A.   NO, MA'AM.

 1  Q.  DID ANYBODY DETERMINE WHETHER OR NOT HE HAD HAD ANY ALCOHOL

 2  OR WHETHER OR NOT HE WAS ACTUALLY IMPAIRED?

 3  A.  NO, HE WAS NOT TESTED FOR THAT.

 4  Q.  OKAY.

 5          MS. KRASNOFF:  NO FURTHER QUESTIONS.

 6          THANK YOU.

 7          THE COURT:  GOVERNMENT, ANY REDIRECT?

 8          MR. GERARD:  NO, YOUR HONOR.

 9          THE COURT:  OKAY.

10          DOES EITHER SIDE HAVE ANY MORE EVIDENCE TO PROFFER?

11          MS. KRASNOFF:  NO, YOUR HONOR.

12          MR. GERARD:  NOTHING FROM THE GOVERNMENT, JUDGE.

13          THE COURT:  YOU MAY STEP DOWN.

14          THE WITNESS:  THANK YOU.

15          THE COURT:  OKAY.  GOVERNMENT, DO YOU HAVE ANY

16  ARGUMENT?

17          MR. GERARD:  YES, JUDGE.

18          SO THE GOVERNMENT IS SEEKING PRETRIAL DETENTION ON THE

19  BASIS OF THE DEFENDANT'S RISK OF FLIGHT AS WELL AS HIS DANGER

20  TO THE COMMUNITY.

21          AS FAR AS THE DEFENDANT'S RISK OF FLIGHT THE

22  GOVERNMENT WOULD LIKE TO POINT OUT THAT THE DEFENDANT IS FACING

23  BY THE GOVERNMENT'S CALCULATIONS 63 TO 78 MONTHS WITH A 15 YEAR

24  MANDATORY SENTENCE IF CONVICTED OF THE 924(E) CHARGE.

25          ADDITIONALLY, PER THE PRETRIAL SERVICES REPORT THE

1  DEFENDANT HAS BEEN STAYING WITH A FRIEND.  HE WAS STAYING WITH

2  A FRIEND UP UNTIL HIS DATE OF ARREST ON NOVEMBER 14 OF 2019.

3  IT'S UNCLEAR WHETHER HE COULD RETURN TO STAY WITH THAT FRIEND

4  NOW THAT HE'S PENDING CRIMINAL CHARGES.  IT'S ALSO UNCLEAR WHO

5  THAT FRIEND IS AND IF THAT FRIEND IS ENGAGED IN ANY SORT OF

6  CRIMINAL ACTIVITY OR ANYTHING LIKE THAT.

7          THE DEFENDANT ALSO LACKS STABLE EMPLOYMENT.  PER THE

8  PRETRIAL SERVICES REPORT THE DEFENDANT HAS BEEN UNEMPLOYED

9  SINCE 2014.  THE DEFENDANT COLLECTS DISABILITY AS WELL AS FOOD

10  STAMPS IN AN AMOUNT THAT'S LISTED IN THE PRETRIAL SERVICES

11  REPORT.

12          ADDITIONALLY, JUDGE, THE PRETRIAL SERVICES REPORT

13  GIVES NO INDICATION OF ANY FINANCIALLY RESPONSIBLE ASSURITIES

14  WHO WOULD BE WILLING TO POST A BOND ON HIS BEHALF.

15          ADMITTEDLY, JUDGE, THE DEFENDANT HAS RESIDED IN MIAMI

16  HIS ENTIRE LIFE AND THE GOVERNMENT IS UNAWARE OF ANY PRIOR

17  FAILURES FOR FAILURE TO FOR FAILURE TO APPEAR IN COURT IN ANY

18  CASES.

19          AND BESIDES THE DEFENDANT ATTEMPTING TO FLEE FROM LAW

20  ENFORCEMENT IN THIS CASE THE GOVERNMENT IS UNAWARE OF HIM

21  TRYING TO EVADE LAW ENFORCEMENT IN ANY OF HIS PRIOR CASES.

22          SO THAT'S THE GOVERNMENT'S ARGUMENT FOR THE RISK OF

23  FLIGHT IS ESSENTIALLY BASED ON HIS LACK OF STABLE RESIDENCE,

24  HIS LACK OF STABLE EMPLOYMENT, LACK OF FINANCIAL RESPONSIBLE

25  ASSURITIES AND THE SIGNIFICANT SENTENCE THAT HE IS FACING IF

1  CONVICTED OF THESE CRIMES.

2       REGARDING THE DANGER TO THE COMMUNITY.  THIS DEFENDANT
3  HAS A VERY LENGTHY CRIMINAL HISTORY.  ACCORDING TO THE PRETRIAL
4  SERVICES REPORT THE CRIMINAL HISTORY BEGINS ON PAGE THREE.

5       THE DEFENDANT HAS BEEN CONVICTED IN SIX SEPARATE
6  CASES.  HE HAS RECEIVED WITHHOLDS OF ADJUDICATION IN TWO
7  SEPARATE CASES.  HIS ARREST HISTORY DATES BACK TO AGE 14, AND
8  FROM AGE 14 TO HILLS CURRENT AGE OF 42 YEARS OLD HE HAS BEEN
9  EITHER PENDING CRIMINAL CHARGES, SERVING A SENTENCE OR HAS BEEN
10  AT LEAST ARRESTED IN ALMOST EVER SINGLE YEAR AT SOME POINT FROM
11  1993 UNTIL THE PRESENT.

12       THE GOVERNMENT WOULD LIKE TO POINT OUT THAT THE
13  DEFENDANT HAS A HISTORY OF VIOLENCE.  SPECIFICALLY ON PAGE FOUR
14  OF THE PRETRIAL SERVICES REPORT IN CASE J NINE SIX THREE SIX
15  FIVE THREE THE DEFENDANT WAS ADJUDICATED FOR RESISTING AN
16  OFFICER WITH VIOLENCE.  ADDITIONALLY IN CASE F NINE SIX THREE
17  FIVE -- THREE FIVE THREE EIGHT ONE, THE DEFENDANT WAS
18  ADJUDICATED FOR ARMED ROBBERY WITH A FIREARM OR DEADLY WEAPON.

19       THEN ON PAGE FIVE OF THE PRETRIAL SERVICES REPORTS IN
20  2002 IN CASE F NINE SEVEN THREE THREE FOUR ZERO TWO THE
21  DEFENDANT WAS CONVICTED OF -- OF AN ARMED ROBBERY WITH A
22  FIREARM, ASSAULT ON A POLICE OFFICER, RESISTING OFFICER WITHOUT
23  VIOLENCE.  AND THEN IN 2017, THE BOTTOM OF PAGE FIVE, THE
24  DEFENDANT WAS CONVICTED IN CASE F ONE SEVEN ONE TWO ZERO EIGHT
25  THREE FOR RESISTING AN OFFICER WITH VIOLENCE, CRIMINAL MISCHIEF

 1  AS WELL AS THREATENING A LAW ENFORCEMENT OFFICER OR FIRE
 2  FIGHTER.

 3       THE DEFENDANT ALSO HAS A HISTORY OF COMMITTING CRIMES
 4  WHILE HE IS PENDING HIS CRIMINAL PROCEEDINGS IN OTHER OFFENSES.
 5  AND SO I WOULD LIKE TO POINT OUT THE INSTANCES OF WHEN THAT
 6  HAPPENED.

 7       SO AT THE TOP OF PAGE FOUR THE DEFENDANT WAS ARRESTED
 8  IN J NINE FOUR ONE TWO NINE NINE TWO WHILE HE WAS PENDING
 9  CRIMINAL PROCEEDINGS IN J NINE FOUR EIGHT SEVEN FIVE SIX B.
10  THAT SECOND CASE IS AT THE BOTTOM OF PAGE THREE.  ADMITTEDLY
11  BOTH OF THOSE CASES WERE -- THERE IS NO ACTION TAKEN BY THE
12  STATE.  HOWEVER, THE ARREST IN THE J NINE FOUR EIGHT SEVEN FIVE
13  SIX B CASE PRECEDED HIS ARREST IN J NINE FOUR ONE TWO NINE NINE
14  TWO.

15       THEN ADDITIONALLY IN 1996 THE DEFENDANT WAS ARRESTED
16  ON J NINE SIX THREE SIX FIVE THREE.  THIS IS THE THIRD CASE
17  DOWN ON PAGE FOUR.  AND THEN WHILE THAT CASE WAS STILL PENDING
18  THE DEFENDANT WAS ARRESTED IN J NINE SIX ONE ONE SEVEN SIX TWO.
19  THIS SECOND CASE WAS EVENTUALLY NOLLE PROSSED BY THE STATE.

20       IN CASE F NINE SIX THREE FIVE THREE ONE, THIS IS THE
21  FOURTH CASE DOWN ON PAGE FOUR, THE DEFENDANT WAS PLACED ON
22  PROBATION FOR COMMITTING AN ARMED ROBBERY IN 1996.  WHILE THE
23  DEFENDANT WAS ON PROBATION FOR THIS ARMED ROBBERY HE WAS
24  ARRESTED FOR A STRONG-ARMED ROBBERY AS WELL AS AN ADDITIONAL
25  ARMED ROBBERY.  THE DATE OF ARREST FOR THOSE CASES WAS OCTOBER

1   17 OF 1997 AND THEY'RE INCLUDED IN THE DEFENDANT'S PRETRIAL

2   SERVICES REPORT AT THE BOTTOM OF PAGE FOUR.  THAT STRONG-ARMED

3   ROBBERY AND ARMED ROBBERY WHERE NOLLE PROSSED.

4           IN 2002 WHILE THE DEFENDANT WAS STILL ON PROBATION FOR

5   THE F NINE SIX THREE FIVE THREE ONE ARMED ROBBERY THE DEFENDANT

6   WAS ARRESTED FOR AN ADDITIONAL ARMED ROBBERY WITH A FIREARM.

7   AND IN THIS CASE HE WAS SENTENCED TO 11 YEARS IN STATE PRISON

8   AND HIS PROBATION ON THE F NINE SIX ARMED ROBBERY WAS REVOKED

9   AND HE WAS SENTENCED TO 78 MONTHS IN STATE PRISON WHICH RAN

10  CONCURRENTLY.

11          THEN TOWARDS THE BOTTOM OF PAGE FIVE THE DEFENDANT WAS

12  ARRESTED IN F ONE SEVEN TWO ZERO ZERO SEVEN ON JANUARY 31,

13  2017.  WHILE HE WAS PENDING CRIMINAL PROCEEDINGS IN THAT CASE

14  HE WAS ARRESTED IN THE CASE RIGHT BELOW IT, F ONE SEVEN TWO

15  THREE EIGHT EIGHT.  AND THAT SECONDS ARREST OCCURRED ON

16  FEBRUARY 6 OF 2017.

17          THE GOVERNMENT UNDERSTANDS THAT THE FIRST COLUMN FROM

18  THE DATE OF ARREST ON THE PSR SAYS FEBRUARY 1O, 2017, BUT --

19  FOR BOTH CASES.  BUT THE GOVERNMENT PULLED THE ARREST

20  AFFIDAVITS FROM THOSE CASES AND INDICATE THE DATES AS -- AS

21  JUST SAID BY THE GOVERNMENT.

22          THE COURT:  I'M SORRY, MR. GERARD.

23          CAN YOU TELL ME WHICH CASE YOU WERE REFERRING TO THAT

24  HAS THE WRONG DATES?

25          MR. GERARD:  SURE.  IT'S F SEVENTEEN TWO THOUSAND

1   SEVEN AS WELL AS F SEVENTEEN TWO THREE EIGHT EIGHT.  BOTH OF

2   THOSE ARE ON PAGE FIVE.

3          THE COURT:  GOT IT.  THANK YOU.  I APPRECIATE IT.

4          MS. KRASNOFF:  WHAT ARE THE CORRECT DATES FOR THOSE?

5          MR. GERARD:  THE CORRECT DATES ARE IN F ONE SEVEN TWO

6   THOUSAND SEVEN, DATE OF INCIDENT JANUARY 31, 2017, AND SAME

7   DATE FOR THE ARREST.

8          AND THEN IN F ONE SEVEN TWO THREE EIGHT EIGHT, DATE OF

9   INCIDENT AND DATE OF ARREST FEBRUARY 6, 2017.

10         THE COURT:  OKAY.

11         MR. GERARD:  AND THEN THE SAME SITUATION OCCURRED IN

12  THE NEXT -- IN THE LAST TWO CASES ON PAGE FIVE WHICH ARE F ONE

13  SEVEN ONE ONE SIX ZERO FIVE AND F ONE SEVEN ONE TWO ZERO EIGHT

14  THREE.

15         THE PSR INDICATES THAT BOTH OF THOSE CASES -- IN BOTH

16  OF THOSE CASES THE DEFENDANT WAS ARRESTED ON JUNE 20TH OF 2017.

17  HOWEVER, THE ARREST AFFIDAVITS SHOW THAT IN F ONE SEVEN ONE ONE

18  SIX ZERO FIVE THE DEFENDANT WAS ARRESTED ON JUNE 11 OF 2017,

19  AND IN F ONE SEVEN ONE TWO ZERO EIGHT THREE THE DEFENDANT WAS

20  ARRESTED ON JUNE 18 OF 2017.

21         SO, JUDGE, IN SUM THE DEFENDANT HAS A VERY LENGTHY

22  CRIMINAL HISTORY.  THE DEFENDANT HAS A SIGNIFICANT HISTORY OF

23  USING VIOLENCE AND -- AND WEAPONS IN HIS OFFENSES AND HE HAS A

24  HISTORY OF COMMITTING ADDITIONAL CRIMINAL OFFENSES WHILE ON

25  PROBATION OR PENDING CRIMINAL PROCEEDINGS IN OTHER CASES.

1    SO FOR THAT REASON AND THE REASON OF THE RISK OF

2 FLIGHT THE GOVERNMENT BELIEVES THAT THE DEFENDANT SHOULD BE

3 HELD IN PRETRIAL DETENTION.

4    THANK YOU.

5    THE COURT:  OKAY.

6    DEFENSE, ARGUMENT?

7    MS. KRASNOFF:  YOUR HONOR, I'LL START WHERE MR. GERARD

8 DID BY ADDRESSING THE RISK OF FLIGHT.

9    MR. BENTON WAS STAYING WITH A FRIEND.  WE DON'T HAVE

10 ANY REASON TO BELIEVE THAT HE CAN'T GO BACK TO STAYING WITH

11 THAT FRIEND.  BUT WHAT MR. GERARD ALSO BROUGHT TO THE COURT'S

12 ATTENTION IS THAT THERE ARE NO FINANCIAL ASSURITIES, THERE IS

13 NOTHING TO ENSURE HE WOULD REMAIN WITH THAT FRIEND OR IN MIAMI.

14    AS THE GOVERNMENT MENTIONED, HE'S BEEN IN THIS -- IN

15 MIAMI HIS ENTIRE LIFE.  HIS WHOLE FAMILY RESIDES HERE.  BUT HE

16 ACTUALLY DID HAVE A SURETY THAT WAS WILLING TO PUT THEIR

17 FINANCIAL ABILITIES ON THE LINE FOR HIM BECAUSE IN THE STATE

18 CASE HE WAS ARRESTED ON THIS IN THE STATE IN NOVEMBER.  HE

19 ACTUALLY POSTED A $13,000 CORPORATE SURETY BOND.  A GIRLFRIEND

20 POST -- WAS ABLE TO POST THAT FOR HIM.

21    HE WASN'T ACTUALLY RELEASED ON THAT BOND BECAUSE AT

22 THE TIME THAT IT WAS POSTED THERE WAS ALREADY A WARRANT IN THE

23 SYSTEM FOR THE FEDERAL INDICTMENT AND I GUESS IT JUST TOOK A

24 LONG TIME FOR HIM TO GET OVER HERE.

25    BUT GIVEN THAT THE SURETY CERTAINLY KNEW ALL THE FACTS

1 OF THE CASE, THE CHARGES AND WHAT MR. BENTON WAS FACING IN

2 STATE COURT, WHICH FROM MY REVIEW OF THE CHARGES IS ACTUALLY

3 MORE TIME EVEN THAT HE'S FACING HERE, A SURETY WAS STILL

4 WILLING TO POST THE BOND AND THE STATE COURT JUDGE STILL FELT

5 THAT THAT BOND WAS APPROPRIATE IN THAT CASE DESPITE THE LENGTHY

6 SENTENCE THAT HE'S FACING.

7        I THINK IT'S A LITTLE BIT UNFAIR TO SAY THAT HE

8 DOESN'T MAINTAIN STABLE EMPLOYMENT AND THEN IN THE SAME BREATH

9 SAY THAT HE RECEIVES DISABILITY.  MR. BENTON IS UNABLE TO WORK.

10 HE DOES RECEIVE DISABILITY, HE RELIES ON THAT DISABILITY.

11       AS THE GOVERNMENT SAID THERE IS NO FAILURES TO APPEAR

12 AND FRANKLY HE HAS NOWHERE TO GO.  I MEAN THERE REALLY ISN'T

13 ANY -- HE DOESN'T HAVE THE RESOURCE IS, HE DOESN'T HAVE THE

14 ABILITY AND HE DOESN'T HAVE ANY SORT OF CONNECTIONS ANYWHERE

15 OTHER THAN MIAMI.

16       HE'S NEVER MISSED A COURT DATE, HE'S NEVER FLED FROM A

17 COURT DATE, HE'S NEVER DONE ANYTHING TO LEAD THE COURT TO

18 BELIEVE THAT HE WOULDN'T ABIDE BY ANY CONDITIONS THAT THE COURT

19 SETS OR THAT HE WOULDN'T RETURN TO COURT IF GIVEN THE

20 OPPORTUNITY TO FIGHT THE CASE FROM THE OUTSIDE.

21       REGARDING THE DANGER TO THE COMMUNITY.  AS THE

22 GOVERNMENT PROFFERED, AND AS DETECTIVE ARRNORA STATED, I MEAN,

23 THIS WAS A STOP FOR MR. BENTON BEING IN A PARK WITH A BOTTLE OF

24 BEER.

25       AND FRANKLY HAVING BEEN TO THAT PARK, HAVING LOOKED AT

 1  WHAT THAT PARK LOOKS LIKE, THERE ARE A LOT OF PEOPLE AS THE

 2  DETECTIVE STATED THAT ARE IN THAT PARK AT NIGHT THAT STAY IN

 3  TENTS IN THAT PARK AT NIGHT THAT DO THE SAME THING THAT

 4  MR. BENTON WAS DOING.

 5       I'M NOT SAYING THAT EXCUSES THE BEHAVIOR, AND IF THIS

 6  WAS A SEARCH INCIDENT TO ARREST IT IS WHAT IT IS THAT WILL HAVE

 7  TO BE, YOU KNOW, DEALT WITH EITHER IN A MOTION TO SUPPRESS OR

 8  AT A TRIAL.  BUT CERTAINLY HE WASN'T CAUSING ANY MORE DANGER

 9  THAN ANYBODY IN THE PARK THAT WAS DOING THE EXACT SAME THING

10  THAT HE WAS DOING.

11       THE GUN WASN'T DISPLAYED, THE GUN WASN'T SEEN.  IT

12  WASN'T UNTIL HE WAS BEING ARRESTED FOR HAVING AN OPEN CONTAINER

13  THAT ANYBODY EVEN KNEW THAT HE HAD A GUNNEL ON HIM.

14       MOVING TO MR. BENTON'S CRIME HISTORY.  AND I DON'T

15  HAVE THE BENEFIT OF -- I HAVEN'T BEEN ABLE TO GET THE COURT

16  RECORDS YET.  BUT I DO THINK THAT THERE ARE SOME ISSUES WITH

17  THE PRETRIAL REPORT IN TERMS OF THE DATES AND WHAT THE

18  OVERLAPPING ISSUES ARE THAT THE GOVERNMENT WAS REFERENCING.

19       SO I'LL STOP BY SAYING THAT OBVIOUSLY A LOT OF THE

20  CHARGES THAT THE GOVERNMENT SPOKE ABOUT WERE EITHER NO ACTIONED

21  OR NOLLE PROSSED.  SO WE DON'T HAVE CONVICTIONS, WE DON'T HAVE

22  ANY FINDINGS BEYOND A REASONABLE DOUBT THAT MR. BENTON ACTUALLY

23  COMMITTED THOSE CRIMES.

24       WE ALSO ON LOOKING BACK AS THE GOVERNMENT SAID, THIS

25  IS A LENGTHY CRIMINAL HISTORY IN THE SENSE THAT IT GOES BACK A

1  LONG TIME.  BUT WHAT THAT MEANS IS IT GOES BACK TO WHEN HE WAS

2  A JUVENILE.  SO THEY'RE HOLDING HIM ACCOUNTABLE FOR THINGS THAT

3  HAPPENED WHEN HE WAS 14 AND 15 YEARS OLD.

4        BUT IF WE LOOK AT THE MORE RECENT PRIORS I THINK THAT

5  THERE MUST BE SOME ISSUE REGARDING THE DATES AND MAYBE THE

6  GOVERNMENT CAN CLEAR THEM UP.  I DON'T KNOW.  BUT IF YOUR HONOR

7  LOOKS AT PAGE FOUR, AND LOOKING AT THE FOURTH CASE DOWN, WHICH

8  SAYS THAT THE ARREST WAS ON 1O, 21 OF '96, WHAT MR. BENTON WAS

9  ARRESTED ON IN THAT CASE WERE NON BONDABLE OFFENSES.  SO HE

10  WOULD HAVE REMAINED IN CUSTODY.

11        IF WE THEN LOOK AT THE NEXT PAGE, WHICH IS -- AND LOOK

12  AT THE FIRST CONVICTION ON THE NEXT PAGE WHICH SAYS THAT THERE

13  WAS AN ARREST DATE OF 11, 22, 2002, THAT DOESN'T MAKE SENSE AND

14  CAN'T BE POSSIBLE BECAUSE THE CASE NUMBER IS F NINE SEVEN

15  INDICATING THAT IT WAS AN ARREST EFFECTUATED IN 2997.

16        I HAVE REASON TO BELIEVE THAT THOSE -- THE CHARGES ON

17  IF F NINETY SEVEN CASE ARE RELATED TO OR OCCURRED DURING THE

18  TIME THAT MR. BENTON WAS ALREADY IN CUSTODY ON THAT F

19  NINETY-SIX CASE.

20        THE REASON IT LOOKS LIKE HE WASN'T ON HERE IS BECAUSE

21  IT LOOKS LIKE THERE WAS AN ARREST IN 2002, BUT THAT'S NOT THE

22  CASE.  AS YOU CAN SEE FROM THE DOCKET ALL THE WAY ON THE RIGHT

23  SIDE THERE WERE ACTIONS TAKEN IN THE CASE IN NINETY EIGHT

24  NINETY NINE NINETY NINE.  SO IT CAN'T BE A 2002 ARREST.  AND

25  GOING OFF OF THE CASE NUMBER THAT IT WAS AN ARREST FROM 1997

1  MR. BENTON WOULD HAVE STILL BEEN IN CUSTODY ON THAT 1996 CASE.

2       SO I THINK IT'S POSSIBLE THAT THOSE CONVICTIONS ARE

3  EITHER OVERLAPPING IN THE CHARGES OR OVERLAPPING ON THE ARREST

4  AND CONVICTION DATE WHICH MAY VERY WELL AFFECT WHETHER OR NOT

5  HE'S ACCA AND MAY VERY WELL AFFECT HIS GUIDELINES.

6       SO I NOTE THAT BECAUSE FRANKLY I HAVEN'T BEEN ABLE TO

7  MAKE SENSE OF IT YET WITHOUT THE COURT DOCKET BUT I DO THINK

8  THERE MAY BY SOME ISSUES WITH RELYING ON THE PRETRIAL SERVICES

9  REPORT IN TERMS OF --

10       THE COURT:  IN DATES.

11       (BOTH TALKING AT THE SAME TIME)

12       MS. KRASNOFF:  IN TERMS OF THE DATES, AND THEN IN

13  TERMS OF THE GUIDELINES AND IN TERMS OF THAT MINIMUM MANDATORY

14  BECAUSE IF THESE OVERLAPPING DATES END UP NOT COUNTING AS

15  ADDITIONAL CHARGES THEN WE START -- IT STARTS LOOKING LIKE HE

16  MAY NOT BE ACCA.

17       SO I BRING THAT TO THE COURT'S ATTENTION BECAUSE

18  ALTHOUGH THERE -- CERTAINLY IT LOOKS VERY LENGTHY THERE ARE A

19  LOT OF NOLLE PROSSES, A LOT OF NO ACTIONS, A LOT OF OVERLAPPING

20  DATES, AND WITHOUT THE BENEFIT OF MORE INFORMATION FROM THE

21  COURT DOCKETS I'M NOT SURE THAT WE CAN STATE WITH CERTAINTY

22  THAT THE GOVERNMENT'S ASSESSMENT OF HOW MUCH TIME HE'S LOOKING

23  AT IS ACCURATE.

24       MR. BENTON AS I MENTIONED HAS ALREADY A POSTED A

25  $13,000 BOND.  HE WOULD BE LIABLE TO THAT BONDSMAN FOR --

 1  SHOULD HE VIOLATE IN ANY WAY WHICH CERTAINLY WOULD INCLUDE NOT

 2  APPEARING FOR THE FEDERAL DATE BECAUSE THAT WOULD BE -- IT

 3  WOULD BE NOT COMPLYING WITH THE COURT'S ORDER.  SO HE WOULD BE

 4  LIABLE TO THE BONDSMAN FOR ANYTHING THAT HAPPENS ON THE STATE

 5  SIDE OR ON THE FEDERAL SIDE.

 6          BUT CERTAINLY THE COURT COULD IMPOSE ADDITIONAL

 7  CONDITIONS TO ALLOW MR. BENTON TO REMAIN OUT OF CUSTODY WITH

 8  WHATEVER THE COURT THINKS IS APPROPRIATE.  AND I DON'T THINK

 9  THERE ARE ANY MORE FINANCIAL RESOURCES.  BUT THE CONDITIONS OF

10  THE BOND IN STATE COURT DID NOT INCLUDE HOUSE ARREST.

11  CERTAINLY THE COURT IF WAS INCLINED TO DO THAT COULD IMPOSE A

12  CONDITION OF HOUSE ARREST.

13          HE WOULD BE ABLE TO STAY WITH MR. HOOKS WHO LIVES AT

14  941 NORTHWEST 7TH AVENUE IN MIAMI.  AND THAT'S WHAT WE'RE

15  ASKING THE COURT TO CONSIDER IS A REASONABLE PERSONAL SURETY

16  BOND WITH ANY CONDITION THE COURT DEEMS APPROPRIATE, IF THAT

17  MAY BE HOME DETENTION, AND THAT HE COMPLY WITH THE RESTRICTIONS

18  PLACED ON HIM BY STATE COURT AS WELL AND BY THE BONDSMAN IN THE

19  STATE CASE.

20          THE COURT:  ANY MORE ARGUMENT FROM THE GOVERNMENT?

21          MR. GERARD:  JUDGE --

22          THE COURT:  LET ME ASK YOU THIS ALSO.

23          REGARDING THE DATES OF THE CONVICTIONS THAT YOU HAVE

24  FOR THE CASES AFTER 2013.  I'M NOT GOING TO LOOK AT THE

25  JUVENILE CASES IN TERMS OF HIS RECENT CRIMINAL HISTORY, IT'S

 1  MUCH MORE INTERESTING TO ME.  BUT IN 2013 YOU GAVE US -- YOU

 2  GAVE US SOME CERTAIN DATES.  WHERE DID YOU GET THOSE FROM?

 3       MR. GERARD:  I'M SORRY, YOUR HONOR, WAS THE QUESTION

 4  WHERE?

 5       THE COURT:  YES.

 6       MR. GERARD:  OKAY.  THE GOVERNMENT GOT THOSE DATES

 7  FROM THE MIAMI-DADE COUNTRY ARREST REPORTS.  I'M HAPPY TO --

 8       THE COURT:  OH, YOU HAVE THE ACTUAL ARREST REPORTS.

 9  OKAY.

10       MR. GERARD:  THE A FORM AS IT'S CALLED.

11       THE COURT:  OKAY.  THEN YOU CAN SHARE THOSE WITH THE

12  DEFENSE?

13       MS. KRASNOFF:  SURE.

14       THE COURT:  I'LL GIVE YOU A FEW MINUTES SO YOU CAN

15  CHECK THOSE DATES ON THE MORE RECENT ARRESTS AND CONVICTIONS.

16       MS. KRASNOFF:  THANK YOU, YOUR HONOR, AND MR. GERARD.

17       CERTAINLY FROM THE ARREST FORMS IT LOOKS AS THROUGH --

18  AND I'M LOOKING AT PAGE FIVE, THE 2017 CASES.  THERE ARE TWO

19  SEPARATE ARREST DATES THAT ARE INACCURATELY REFLECTED ON THE

20  PRETRIAL SERVICES REPORT --

21       THE COURT:  AH-HUH.

22       MS. KRASNOFF:  -- BUT ONE OF THOSE CASES WAS A NO

23  ACTION.  SO IT WOULDN'T AFFECT HIS CRIMINAL HISTORY THAT THEY

24  WERE TWO DIFFERENT DATES.

25       ADMITTEDLY IT LOOKS AS THROUGH THE LAST TWO CASES HAVE

1  SEPARATE ARREST DATES.  AND SO THAT COULD CHANGE HIS CRIMINAL

2  HISTORY BECAUSE IT LOOKS AS THROUGH -- WELL, YEAH.  IT LOOKS AS

3  THROUGH THOSE WOULD BE COUNTED SEPARATELY.

4       BUT I WOULD JUST SAY IF ANYTHING IT SORT OF INDICATES

5  THE INACCURACY OF THIS REPORT AND THE NEED TO DELVE A LITTLE

6  BIT FURTHER INTO THESE PRIORS AND INTO THE COURT DOCKETS TO

7  DETERMINE WHETHER OR NOT HE'S ACTUALLY ACCA AND TO DETERMINE

8  WHETHER OR NOT THOSE GUIDELINES ARE CORRECT.

9       THE COURT:  BUT AS FAR AS THE DATES OF THE ARREST IT

10  SEEMS TO BE CLEAR THROUGH THAT HE'S BEEN ARRESTED, HE COMMITTED

11  ANOTHER OFFENSE, THEN HE'S ARRESTED, HE'S COMMITTING OFFENSES

12  EVEN THOUGH THE CASES ARE PENDING IS WHAT IT APPEARS TO BE --

13       MS. KRASNOFF:  THERE ARE SEPARATE --

14       THE COURT:  -- THE MOST RECENT --

15       (BOTH TALKING AT THE SAME TIME)

16       MS. KRASNOFF:  -- ARREST DATES.  YES, THERE ARE

17  SEPARATE ARREST DATES.

18       THE COURT:  OKAY.  AND THAT GOES TO DANGER TO THE

19  COMMUNITY.

20       OKAY.  GOVERNMENT, DID YOU WANT TO PROCEED WITH MORE

21  ARGUMENT, TO REPLY TO ANYTHING THE DEFENSE JUST SAID?

22       MR. GERARD:  JUDGE, THE ONLY THING THE GOVERNMENT

23  WOULD LIKE TO POINT OUT IS THAT AT THE TOP OF PAGE FIVE THE

24  DEFENSE HAD REFERENCED THE F NINE SEVEN THREE THREE FOUR ZERO

25  TWO CASE, SPECIFICALLY THE DATE OF THE ARREST.

1              THE GOVERNMENT AGREES THAT THAT 2002 -- THE NOVEMBER

2    22ND OF 2002 ARREST DATE IS ESSENTIALLY -- IT'S INACCURATE

3    JUST --

4              THE COURT:  IT DOESN'T MAKE --

5              MR. GERARD:  -- BECAUSE HE HAD BEEN --

6              THE COURT:  -- SENSE.

7              MR. GERARD:  -- HE HAD BEEN SENTENCED IN 1999 --

8              THE COURT:  RIGHT.

9              MR. GERARD:  -- FOR THAT SAME COUNT.

10             BUT, JUDGE, FROM LOOKING AT THE CASE NUMBERS FOR THE F

11   NINE SEVEN THREE THREE FOUR ZERO TWO AS WELL AS THE ROBBERIES

12   THAT WERE EVENTUALLY DROPPED FROM THE PRECEDING PAGE IT DOES

13   APPEAR THAT THEY ARE SEPARATE INSTANCES.  AND THE REASON I SAY

14   THAT IS BECAUSE THE CASE NUMBERS DO NOT APPEAR TO BE IN

15   SEQUENCE.

16             THE COURT:  OKAY.

17             MR. GERARD:  THANK YOU.

18             THE COURT:  AND THE DEFENSE'S ALTERNATIVE TO PRETRIAL

19   DETENTION WOULD BE HOUSE ARREST?

20             MS. KRASNOFF:  YES, YOUR HONOR.

21             MS. KRASNOFF:  WITH A PERSONAL SURETY BOND NOTING THAT

22   MR. BENTON IS ALREADY LIABLE TO A CORPORATE SURETY FOR $13,000.

23             THE COURT:  HAVE YOU BEEN IN CONTACT AT ALL WITH THE

24   INDIVIDUAL THAT HE PURPORTS TO LIVE WITH.

25             MS. KRASNOFF:  I HAVEN'T, YOUR HONOR.

1        THE COURT:  MY CONCERN IS THAT IF HE DOES IN FACT LIVE
2   WITH HIM IT APPEARS THAT HE'S BEEN -- HE'S IN THE PARK THROUGH
3   VERY LATE AT NIGHT.

4        MS. KRASNOFF:  YES, YOUR HONOR.

5        I DON'T -- HE WAS RIDING A BIKE THROUGH A PARK LATE AT
6   NIGHT.  I CERTAINLY GO ON RUNS LATE AT NIGHT.  HE WAS STAYING
7   WITH MR. HOOKS.

8        I'LL ALSO NOTE THAT MR. BENTON HAS AN ADULT DAUGHTER,
9   LAWANA WILEY.  MISS WILEY LIVES IN MIAMI.  SHE'S CURRENTLY OUT
10  OF THE STATE BUT WOULD WE WERE ABLE TO SPEAK TO HER.  SHE WOULD
11  BE WILLING TO SIGN -- TO CO-SIGN A BOND IF THE COURT IS WILLING
12  TO CONSIDER THAT.  SHE WORKS AT CAMMILUS HOUSE.  SHE'S BEEN
13  THERE FOR A WHILE AND SHE WORKS AS SECURITY AT CAMMILUS HOUSE.
14  SO SHE HAS A STABLE JOB, SHE HAS A STABLE RESIDENCE IN MIAMI.

15       WE DIDN'T ASK IF MR. BENTON WOULD BE ABLE TO STAY WITH
16  HER BECAUSE WE WERE UNDER THE BELIEF THAT HE WOULD STAY WITH
17  MR. HOOKS IF HE WAS RELEASED.

18       THE COURT:  OKAY.  THANK YOU.

19       MS. KRASNOFF:  SO MR. BENTON IT SEEMS AS THROUGH HE
20  WOULD BE ABLE TO STAY WITH MISS WILEY IF THAT IS SOMETHING THAT
21  THE COURT WOULD PREFER OR A CONDITION THAT THE COURT THINKS
22  WOULD BE MORE RESTRICTIVE OR BETTER ENSURE MR. BENTON'S
23  APPEARANCE IN COURT.

24       THE COURT:  BUT SHE IS NOT HERE AT THIS TIME EITHER.

25       MS. KRASNOFF:  NO, YOUR HONOR.

1        IF THE COURT IS INCLINED TO -- OR IF THE COURT WOULD

2  PREFER TO HEAR FROM HER SHE WILL BE BACK AFTER THE WEEKEND.  SO

3  IF THE COURT WANTED TO RESERVE RULING WE COULD CERTAINLY WAIT

4  AND RESET THIS FOR NEXT WEEK.  I COULD SEE IF MISS WILEY IS

5  ABLE TO COME IN SO THAT THE COURT COULD ASK HER QUESTIONS.

6        THE COURT:  WELL, THERE ARE A NUMBER OF CONCERNS HERE

7  AND THE RISK OF FLIGHT IS REALLY ONLY ONE OF THEM, AND A FAIRLY

8  MINOR ONE.  I AGREE THAT HE APPEARS TO HAVE LIVED IN THIS

9  COMMUNITY FOR A LONG PERIOD OF TIME AND HE HAS TIES TO THIS

10  COMMUNITY, AND HE HAS SERVED LONG SENTENCES UNFORTUNATELY

11  BEFORE AND REMAINED IN THE COMMUNITY.

12        MY GREATER CONCERN IS THE DANGER TO THE COMMUNITY

13  BASED ON THE FREQUENCY OF CRIMINAL CASES, AND I'M NOT EVEN

14  GOING TO REALLY CONSIDER THE ONES WHEN HE WAS A TEENAGER.  I'M

15  MORE CONCERNED ABOUT THE RECENT ONES WHERE HE'S BEEN ARRESTED

16  AND HE'S STILL COMMITTING OFFENSES.  THAT SHOWS TO ME AN

17  INABILITY TO COMPLY WITH THE LAW, AND THOSE ARRESTS WERE WITHIN

18  THE LAST TWO YEARS.

19        SO EVEN THOUGH HE HAS DONE A SUBSTANTIAL TIME IN

20  PRISON ALREADY HE'S COME OUT AND CONTINUED TO VIOLATE THE LAW.

21        THE OTHER CONSIDERATION IS THE FACT THAT THE EVIDENCE

22  AGAINST HIM IS QUITE STRONG.  HE WAS ACTUALLY CAUGHT WITH THE

23  WEAPON THAT HE CLEARLY IS NOT ENTITLED TO HAVE BASED ON HIS

24  CRIMINAL HISTORY.

25        HOUSE ARREST DOES NOT SEEM TO ME TO BE APPROPRIATE

 1  UNDER THIS CONDITIONS IN ORDER TO KEEP THE COMMUNITY SAFE

 2  BECAUSE CLEARLY HE WAS NOT -- HE DID NOT APPEAR TO HAVE BEEN

 3  LIVING AT THE LOCATION THAT HE HAS PROPOSED.

 4          ALSO PRETRIAL SERVICES HAS INTERVIEWED HIM HAS

 5  RECOMMENDED THAT HE BE DETAINED PRETRIAL BASED ON THE FACT THAT

 6  THE SAFETY OF THE COMMUNITY IS IN JEOPARDY.

 7          SO THE COURT FINDS BY CLEAR AND CONVINCING EVIDENCE

 8  THAT THERE IS NO CONDITION OR A COMBINATION OF CONDITIONS OF

 9  RELEASE THAT WOULD REASONABLY ASSURE THE SAFETY OF ANY OTHER

10  PERSON IN THE COMMUNITY.  SO IN THIS SITUATION IT'S APPROPRIATE

11  TO ORDER THE DEFENDANT TO BE DETAINED PENDING TRIAL.

12          MS. KRASNOFF:  UNDERSTOOD.

13          THANK YOU, YOUR HONOR.

14          THE COURT:  THANK YOU.

15          THANK YOU FOR ALL OF YOUR EFFORTS FROM BOTH SIDES.

16          THE CLERK:  ALL RISE.

17          THE COURT IS IN RECESS.

18                         - - -

19

20

21

22

23

24

25

```
 1
 2
 3                    C E R T I F I C A T E
 4
 5
 6   UNITED STATES OF AMERICA
 7   SOUTHERN DISTRICT OF FLORIDA
 8
 9
10        I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED
11   STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO
12   HEREBY CERTIFY THAT THE FOREGOING 28 PAGES CONSTITUTE A TRUE
13   TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN
14   THE CITY OF MIAMI, FLORIDA, IN THE MATTER THEREIN STATED.
15        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 9TH
16   DAY OF FEBRUARY 2020.
17
18                              /S/CARL SCHANZLEH
                                CARL SCHANZLEH, RPR-CM
19                              CERTIFIED COURT REPORTER
                                9960 SW 4TH STREET
20                              PLANTATION, FL 33324
                                TELEPHONE 954 424-6723
21   ,
22
23
24
25
```